# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOVAN WATKINS #438146, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JKB-17-1153 |
| THE SECRETARY OF DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, <br> MCI-J D.O.C. STAFF, <br> STEPHEN T. MOYER, *Secretary DPSCS*, <br> TIKAYE PARKER, <br> CAPTAIN LILLY, <br> LT. BROWN, | * <br><br> * <br><br> * <br><br> * <br> * | |
| Defendants. | | |

\*\*\*

## **MEMORANDUM OPINION**

Self-represented Plaintiff Jovan Watkins, presently incarcerated at Eastern Correctional Institution in Westover, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendants, Secretary Stephen T. Moyer, Tikaye Parker, and Lieutenant Janice Brown.[1] *See* ECF No. 1. Through the Complaint filed on April 26, 2017, and supplemented on May 10, 2017, Watkins alleges that when he was housed at the Maryland Correctional Institution-Jessup ("MCI-J"), Defendants violated his Eighth Amendment right, as well as their own policy and procedures, by refusing to escort him to the medical unit for treatment, as had been directed by a treating physician for a "serious medical need." *Id.* at p. 4; ECF No. 6. He seeks $550,000 in monetary damages. *Id.* at p. 8.

---

[1] Watkins initially named as Defendants "MCI-J D.O.C. Staff" and "the Secretary of Department of Public Safety and Correctional Services," which is Stephen T. Moyer. ECF No. 1. There is no such person as "MCI-J D.O.C. Staff" and therefore, that Defendant shall be dismissed. After being directed to supplement his Complaint with the names of individuals whom he claims are responsible for the alleged wrongdoing, Watkins added Captain Parker, Captain Lilly, and Lieutenant Brown. ECF Nos. 6 & 8. Counsel entered his appearance for all Defendants except Captain Lilly. *See* ECF No. 30. However, as Watkins has failed to allege facts sufficient to state a valid claim against Captain Lilly, Captain Lilly shall be dismissed from the suit.

On December 21, 2017, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 30. Watkins filed a response on January 4, 2018. ECF No. 32. After review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2016). Defendants' Motion shall be construed as a Motion for Summary Judgment and shall be granted.[2]

### Background

Watkins states that on June 11, 2015, he was transferred from the Baltimore City Detention Center to MCI-J. ECF No. 1, p. 4.[3] While making his bed at MCI-J, he cut the middle finger on his right hand. *Id.* Watkins had an urgent visit with a medical provider on June 19, 2018, at which time his finger appeared slightly swollen with some blood. ECF No. 30-2, p. 6.

On June 30, 2015, while Watkins was housed in general population, he saw Dr. Brenda Hall at "K-Hospital" in MCI-J. *Id.* at p. 13. A culture was taken from the injured site and Watkins was given a 30-day pass to go to K-Hospital for treatment and dressing changes. *Id.* at p. 14. Watkins asserts that he followed the medical instructions while in general population. ECF No. 1, p. 4.

On July 10, 2015, the culture came back positive for MRSA.[4] ECF No. 30-2, p. 16. As a result, Dr. Hall placed Watkins on "social isolation" in H-Unit. *Id.* Dr. Hall's notes from the medical visit indicated a plan that included daily dressing changes and a follow-up appointment in five days. *Id.* However, the "Medical Assignment" form that was issued by the medical provider directed MCI-J staff only to "provide single cell for 'Social Isolation' until medically

---

[2] On April 23, 2018, counsel for Defendants filed a Motion to Withdraw and Substitute Counsel. ECF No. 33. That Motion shall also be granted.

[3] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

[4] Methicillin-resistant Staphylococcus aureus (MRSA) infection is caused by a type of staph bacteria that has become resistant to many of the antibiotics used to treat ordinary staph infections. *See* https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336 (last visited August 9, 2018).

cleared." *Id.* at p. 30. The form was silent as to the need for dressing changes.

Watkins alleges that, from July 10, 2015 through July 15, 2015, MCI-J staff at H-Unit refused to escort him to K-Hospital for dressing changes and treatment. ECF No. 1, p. 5. He also alleges that, from July 10, 2015 through July 14, 2015, H-Unit staff refused to let him shower and did not provide running water to his cell for him to wash his hands. *Id.* Watkins claims that he was in pain from July 10, 2015 through July 15, 2015, and his finger was swollen and smelled rotten. *Id.* He alleges that he requested to see a supervisor, and spoke to Defendant Parker. *Id.* After he told Parker about H-Unit staff's refusal to escort him to K-Hospital, he still was not escorted to medical by H-Unit staff. *Id.*

Watkins alleges that he continued to ask to be escorted to medical by H-Unit staff at MCI-J and was denied. *Id.* at pp. 5-6. He claims that he spoke with Captain Lilly and still was not taken to medical. *Id.* at p. 6. Watkins's Supplement references Defendant Brown, and alleges that she spoke with him but that he was still not taken to the medical department. ECF No. 6, p. 4.

According to Watkins, Dr. Hall was informed about the situation on July 15, 2015, at which time she came to see that Watkins was placed in a cell that had running water, given a shower, and escorted to K-Hospital for the treatment and dressing change. ECF No. 1, p. 6. Dr. Hall's notes from that visit indicated that the "finger has shown improvement." ECF No. 30-2, p. 19. She implemented a plan that included daily dressing changes, daily showers, and a follow-up appointment in five days. *Id.* In addition, a "Medical Assignment" form was issued directing MCI-J staff to "take patient to medical for daily dressing change" in the afternoons, and to "allow [patient] daily showers until off 'social isolation.'" *Id.* at p. 29.

Watkins had a follow-up examination on July 24, 2015, and the MRSA infection was

noted to have resolved. *Id.* at pp. 24-25. In his Complaint, Watkins claims that he suffered permanent damage to the middle finger of his right hand. ECF No. 1, pp. 7-8.

Watkins filed several requests for administrative remedy regarding the situation. *See generally* ECF No. 30-3. Initially, Watkins filed Administrative Remedy Procedure ("ARP") MCI-J-0744-15 on July 10, 2015. *Id.* at p. 4. Because it contained multiple issues, ARP MCI-J-0744-15 was denied on July 22, 2015, and Watkins was instructed to resubmit. *Id.* Watkins resubmitted his request on August 1, 2015, alleging that he was not provided safe housing and was denied proper medical treatment from July 10, 2015, to July 15, 2015. *Id.* at p. 3. After an investigation, Watkins's request was denied on September 14, 2015, with the following response:

> You were treated appropriately by medical for the infection in your finger. You were provided medication, dressing changes and follow up. Medical cannot address the issue with the linens. If you require additional medical intervention please follow the facility sick call process.

*Id.*

Before the Warden issued the response, Watkins filed an appeal on August 9, 2015, stating that he had not received a response to his request. *Id.* at p. 12. At that time, the appeal was dismissed and Watkins was directed to resubmit the appeal by September 5, 2015, along with an original copy of MCI-J-0744-15. *Id.* Watkins did not resubmit the appeal until September 15, 2015, at which time it was dismissed for failure to resubmit by the due date given. *Id.* at p. 11.

Subsequently, Watkins filed a complaint with the Inmate Grievance Office, and an administrative hearing was held on January 7, 2016. *Id.* at p. 17. On March 17, 2016, the administrative hearing officer denied and dismissed Watkins's grievance after concluding that Watkins failed to establish the MCI-J staff improperly kept him from visiting the prison medical

4

unit from July 11, 2015, until July 15, 2015. *Id.* at p. 24. The administrative hearing officer also found that Watkins did not demonstrate any "deliberate indifference by staff with regard to his health or safety." *Id.* at p. 23.

Watkins also filed ARP MCI-J-0745-15 on July 13, 2015, complaining about the cell being flooded with water, not being taken to the medical unit for wound care and dressing change, and not having running water. *Id.* at p. 29. Because it contained multiple issues, ARP MCI-J-0745-15 was denied on July 22, 2015, and Watkins was instructed to resubmit. *Id.* Watkins resubmitted his request on July 28, 2015, stating that H-Unit staff refused to let him shower from July 10, 2015, to July 15, 2015. *Id.* at p. 28. After an investigation, on September 15, 2015, ARP MCI-J-0745-15 was found meritorious in part; however, because Watkins had been released from medical isolation on July 15, 2015, no further action was warranted. *Id.*

Watkins also filed ARP MCI-J-0746-15 on July 14, 2015, complaining about the cell being flooded with water and not having running water. *Id.* at p. 44. For procedural reasons, Watkins was directed to resubmit. *Id.* Upon resubmission on July 28, 2015, Watkins' request was dismissed on August 27, 2015, after determining that the sink in the cell was working and Watkins had since been moved to a different cell. *Id.* at p. 42.

Lastly, on July 28, 2015, Watkins filed ARP MCI-J-0872-15, which was dismissed as repetitive to ARP MCI-J-0744-15. *Id.* at pp. 54-56.

Defendant Parker has submitted a declaration under oath stating that she has no recollection of the alleged incident. ECF No. 30-4 at ¶5. Parker states that as a supervisory officer, she would have had only limited contact with an inmate. *Id.* She further states that she follows institutional policy and would have asked staff to respond to any inmate complaints. *Id.*

5

at ¶6. If an inmate was not being treated properly, Parker swears that she would have instructed the staff to make sure the inmate received what he was supposed to have received. *Id.*

Defendant Brown has submitted a declaration under oath stating that she has a very limited recollection about an inmate asking about going to the medical department for a dressing change. ECF No. 30-5 at ¶ 6. She cannot recall when this encounter occurred, nor can she remember the name of the inmate. *Id.* Brown does not recall the inmate stating that he had MRSA, but only that he needed to get a dressing changed. *Id.* She recalls instructing the Correctional Officer II accompanying her to make sure that the inmate got to the medical department, but did not hear anything further about the request. *Id.*

## Applicable Legal Standards

### I. Motion to Dismiss

In reviewing a complaint in light of a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), unsupported legal conclusions, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), and conclusional factual allegations devoid of any

reference to actual events, do not suffice, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## II. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The court reviewing the motion must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## Analysis

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support, Defendants argue that (1) Defendant Moyer is entitled to dismissal because he did not personally participate in the alleged wrongdoing; (2) Watkins has failed to state a claim for deliberate indifference to a serious medical need; (3) the Eleventh Amendment bars this suit against the Defendants in their official capacity; and (4) Defendants are entitled to qualified immunity. ECF No. 30-1.

### I. Defendant Moyer's Liability

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Other than naming Defendant Moyer in the caption of the Complaint, Watkins does not attribute any specific action or inaction on Moyer's part that resulted in a constitutional violation. Simply stated, Watkins's allegations fail to state a claim against Moyer.

Alternatively, Watkins has failed to plead sufficient facts from which to discern Moyer's supervisory liability for his claim. The doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). As such, to establish supervisory liability under § 1983, a plaintiff must show that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to

citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Here, Watkins has failed to demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Moyer's subordinates. As will be discussed below, Watkins has not shown that his constitutional rights were violated; thus, it follows that he has failed to demonstrate that Moyer authorized or was indifferent to any such violation. Watkins's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse"). Thus, dismissal of the claims against Moyer is proper under this theory as well.

## II. Deliberate Indifference

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson*

*v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Moreover, in a case involving a claim of deliberate indifference to a medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Watkins cannot meet his burden on his Eighth Amendment claim. No evidence exists to show that Watkins suffered any real harm as a result of Defendants' actions or inaction. Watkins provides no medical conclusions of a clinician, expert reports, or medical records to support any

10

claim that the lack of dressing changes for the short time complained of constituted deliberate indifference to his medical needs, and/or caused him damages. Watkins's medical records demonstrate that when he was seen on July 15, 2015, his wound was healing, and by July 24, 2015, it was healed. There is simply no evidence that Watkins was injured by the refusal to escort him to medical over the four-day period he references in his Complaint.

Even assuming that the objective component of the Eighth Amendment violation were satisfied, Watkins has not alleged facts sufficient to establish the subjective component—that the named Defendants acted with a culpable state of mind. The record contains no evidence that any of the named Defendants possessed actual knowledge of a risk of harm to Watkins by the failure to provide daily dressing changes.

Watkins claims that H-Unit staff, including Defendants Parker and Brown, refused to escort him to K-Hospital despite receiving an order from Dr. Hall stating that the dressing on his hand should be changed daily. Although Watkins was given a 30-day pass for treatment and dressing changes while he was housed in general population, he was not given a similar pass when he was transferred to social isolation on July 10, 2015. While Dr. Hall's notation in Watkins's medical records regarding the July 10, 2015, visit indicated a plan that included daily dressing changes and a follow-up appointment in five days, the medical pass that was issued to custody staff simply directed them to provide Watkins a single cell for social isolation until medically cleared. It did not direct staff to escort Watkins to the medical unit for daily dressing changes, nor did it indicate why Watkins was being assigned to social isolation. It appears that Watkins is at least in part responsible for the delay in resumption of his daily dressing changes in that he never filed the proper paperwork (a sick call slip) to alert the proper parties (medical staff) that he was in need of a dressing change.

11

Moreover, Defendants Parker and Brown have little to no recollection of the encounter with Watkins. Based on their declarations, it appears that both Defendants had supervisory roles and thus had little contact with inmates. As such, neither Defendant would have been responsible for taking an inmate to the medical unit, but they would have ensured that the inmate's rights were not being violated.[5]

Based on this record, Watkins fails to show that Defendants had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety," *Farmer*, 511 U.S. at 834, as MCI-J staff did not have actual subjective knowledge of both Watkins's medical condition and the excessive risk posed by any inaction. In light of the undisputed facts, Watkins cannot prevail on his claims and summary judgment in favor of Defendants is appropriate.[6]

## Conclusion

The Court determines that no genuine issue as to any material fact is presented and Defendants are entitled to a judgment as a matter of law. Summary judgment shall be entered in favor of Defendants and the Complaint shall be denied and dismissed by separate Order.

Dated this 9th day of August, 2018.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

[5] To the extent Watkins claims that Defendants violated their own policy and procedures, such a claim does not rise to a constitutional violation. The adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *accord Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *accord Kitchen*, 116 F. Supp. 3d at 629 n.6.

[6] In light of the Court's rulings, an analysis of Defendants' remaining arguments is not necessary.